Our final case for today is United States v. Christopher Eccles. Mr., pronounce your name, Noel? Noel. Thank you, Your Honor. Matthew Noel for the defense. Noel. Okay. Good afternoon, Your Honors. Yes, we've slipped into the afternoon. May it please the Court, Counsel. Your Honors, this case, as I've stated in my brief, is about whether or not an isolated incident of selling cocaine can be used under a conviction and an additional relevant conduct of a different conspiracy can be used to enhance that sentence. And this Court has recognized over and over again that under 1B13, the government has a fearsome tool to enhance unconvicted conduct, to use unconvicted conduct to enhance sentences. And the crux of our argument here, Your Honors, is that the district court, Judge Reinhart, used two factors. He stated two factors on the record, that there was a common accomplice in both of these cases and a common drug. And it's uncontributed that there was a common drug. My client sold cocaine. He sold cocaine for years. And the second conspiracy consisted only of cocaine, all powder cocaine, no crack, anything like that. So let's back up. So the offensive conviction occurs when your client, Mr. Eccles, I guess, facilitates grafts or tuna, if you wish, sale to the confidential informant, right? Yes, Your Honor. And before that, and as I understand, before this person who's the confidential informant was working for the government, that person has been supplying Eccles with cocaine, right? Eccles is the buyer. Correct. And that's been going on for a year and a half or so, January 2012. So it doesn't strike me as that much of a stretch to say that there is a common course of conduct here. He's working with this other person. They're in the cocaine business. This time he happens to see a way of helping out the person who's normally his source. But they're all kind of in the business together. Now, I do happen to agree with you on accomplice because you can't be an accomplice if you're working for the government. And, of course, eventually the confidential informant is working for the government. But it does strike me as not too much of a stretch to say that this is the same course of conduct. It's only a couple weeks later. They're just chugging along. And I completely agree that temporally these are very close. But under the case law, there has to be temporal proximity, there has to be regularity, and there has to be similarity. And I think regularity and similarity is where this fails. Well, similarity, it's the same drug, it's the same people, it's the same area, it's the same, same, same. And the only thing I disagree with you on, Your Honor, is the same people. The same people are involved. I'm not disagreeing on that factual point. It seems so magic that they've changed roles slightly. This is all kind of a three musketeers, all for one, one for all sort of business. And I understand that. But under the case law, well, actually in the statute, it says common accomplices. It doesn't say common actors or common people. Well, that's if you're doing common scheme or plan as opposed to common course of conduct. Okay. The real problem here, and I agree that there's common people, but this is an isolated incident. And the court has held before where isolated incidents can be grouped together with a larger conspiracy. But other than your saying it's an isolated incident, what required the court? Aren't we dealing here with clear error review, by the way? Yes, we are. So why was the court so far off base to see it as all a package of course of conduct? Well, I think that this course of conduct, we're dealing with nine ounces, which is compared to the additional relevant conduct is very small. I think in grams it was 235 grams. I understand that there were actually two incidents here, but it was kind of, I don't want to say it was only one incident, but the first incident was an introduction to the facilitating of the eight ounces. And we don't know if this was going to be regular in nature or if this was just a one-time deal. Hey, you need eight ounces, I can get you eight ounces. There's no evidence in the record that this eight ounces was going to be used to be redistributed. I think if there was evidence in the record that he was furnishing the confidential informant with cocaine for the confidential informant to feed his network and redistribute, I think we have a different situation here. But there's nothing in the record of that. It's just that the confidential informant was interested in nine, well, really eight ounces, but the one ounce of the introductory. So, but, I mean, is it really that far off base? I mean, because the 2.5 kilos is spread over this two-and-a-half-year period. I mean, I'm not sure Mr. Echols is the biggest drug dealer I've ever seen, but that would suggest that that kind of dimension of dealing is actually common, if that matters. In that 2.5 kilos over two-and-a-half years. It's spread over two-and-a-half years. It comes out to about eight ounces a week. Is that what you're? Something like that. And I agree. There's a casual relationship between this event and the conspiracy. I'm not denying that. But does it bear a strong enough relationship? I think that that's where it fails under the test. I think that if we would know that Mr. Echols was supplying him to redistribute, then I think we're in a different situation. If we knew that Mr. Echols and Tuna were doing this at the same time that the conspiracy was going on, I think we're in a different situation again. We have a clear break here. And I know that there's case law that three years prior can be brought in and all that. I'm not denying that. But we have a clear break where on July 14th the old conspiracy stopped. There was no entrance into that new conspiracy. And then on August 4th we have a buyer-seller relationship. And that's it. And I'll save the rest of my time for rebuttal. Thank you. That's fine. Mr. Peterson. May it please the Court. My name is Joseph Peterson on behalf of the United States. The district court did not clearly err in calculating the drug quantity attributed to the defendant. The district court correctly found that the defendant's purchases, uncharged, of approximately three ounces per month of cocaine from his supplier, who later turned confidential informant. Does he turn C.I. after July 2014 or before that? He turned C.I. approximately two to three weeks before the charge conduct. So up until that time he was supplying the defendant, which the defendant admitted in his plea agreement. He can't be an accomplice, though, once he becomes a government agent, right? Correct. Under the law he cannot be an accomplice if he's acting as an agent of the government. However, I think what the guidelines get at when they talk about an offense involving the same accomplices, and, again, that guideline, as far as common scheme or plan, states if at least one of those factors is present and we already have the same drug involved. But I think the spirit of that is it involves the same actors. And in this case, the whole reason why the- because the early, the two-and-a-half-year course of conduct is what gets you up to the 2.5 kilos so that you wind up with whatever it is, two-and-three-quarters kilos for the relevant conduct. Do you need the same? Do you think there's any difference between talking about a common scheme or plan and a common course of conduct? Well, they're similar, but- I mean, the guidelines separate that by an or. Either a common scheme or plan or, you know, same course of conduct. So maybe they're just chatting. Maybe they're not really drawing a distinction, or maybe they are. And I just wondered if you thought they were different or just different ways of talking around the same concept. I think you could have- Well, scheme and conduct are different. The scheme is the plan. The conduct is the implementation. Yeah, so they could well be different. So if all you're looking for is the same course of conduct, isn't that a little easier for you? Rather than worrying about the CIs flipping to become a government agent and retrospective accomplices and all the rest of that? Yes, that would, under, or as you just stated, it would be easier. But I think they both qualify in this case. The defendant dealt with the confidential informant as his supplier. It was the defendant who contacted the confidential informant and said, I have another supplier that can sell us cocaine as much as we want for $1,300 an ounce. So based on that, the confidential informant set up a buy involving the defendant. But it was the defendant who facilitated the purchase, not the defendant who actually sold the cocaine. And the whole reason why the charge conduct occurred was because of that prior relationship, which the defendant stated he started buying cocaine from the defendant at least seven years prior to his arrest. From the CI, yeah. Right. So all of a sudden he just decides to do the guy a favor and say, you know, if you need another supplier, I've got someone for you. Well, I think the defendant was motivated by his own motives, which included the fact that he had a supplier that was a steady supplier. If he helped him obtain another source of cocaine, that would make it more likely in the future when the defendant wanted to purchase cocaine, he would have cocaine to sell him. In addition, he could have thought, well, if I arrange, if I facilitate this deal, the next cocaine purchase I make from the confidential informant, I'll get a discount on the price since I helped him out. So he had motives to facilitate this transaction based on the prior conduct. That's why it's relevant conduct. And as to, I'm not really sure what the defendant's point is, in regards to when he argued that there's no evidence that the CI was going to redistribute the cocaine to someone else. I'm not sure how that advances their argument. But nonetheless, the defendant knew at the time he had facilitated this deal that the confidential informant sold cocaine regularly, and there's no evidence in the record either that the confidential informant was a user and was going to use the nine ounces of cocaine. That's certainly a commercial amount of cocaine, nine ounces. Correct. Wholesale. And I think the district court judge made a reasonable estimate of the drug quantity. The defendant's own statement was that he purchased anywhere from one to nine ounces per week, and the estimate was based on the most conservative possible estimate, which would be one ounce every three weeks in case there was potentially certain weeks where the confidential informant didn't have a product available. So based on that, the district court made a very reasonable, conservative estimate of the drug quantity, and it's our position that the district court did not clearly err in calculating the drug quantity attributed to the defendant. And unless there's any further questions, I would ask that the court affirm the sentence of the district court. Okay. Thank you very much. Anything further, Mr. Noll? I just want to touch on this common course of conduct versus common planner scheme, and I don't want to misstate the record because I don't have the transcript in front of me, but there's no findings in the sentencing order, so we don't know whether Judge Reinhart found this as a common planner scheme or a common course of conduct, but he certainly analyzed it in the record as a common planner scheme. He states that there's common accomplices, which I don't believe there are, and then he points to the commonality in the drug. So under the verbiage that the district court used, it was certainly that they were pointing toward a common planner scheme, and common course of conduct wasn't even brought up at the district court level, certainly not substantively brought up. So while I don't want to argue whether or not common planner scheme is different than common course of conduct, that would be our argument, and we would ask for the relief we asked for in our brief. Thank you very much. All right, thank you. And you were appointed, were you not? Yes, I was. We appreciate your assistance to your client and to the court. Thank you so much. Thanks as well to the government. We'll take the case under advisement, and the court will be in recess.